UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LYZA FRANKOVIS-MIESFELD,

        Plaintiff,

v.                                        Case No. 19-CV-1842

ANDREW M. SAUL,
Commissioner of the Social Security Administration,

        Defendant.

---

## DECISION AND ORDER

---

### 1. Introduction

Plaintiff Lyza Frankovis-Miesfeld alleges she has been disabled since March 1, 2013. (Tr. 42.) She seeks disability insurance benefits and supplemental security income. After her application was denied initially (Tr. 74-105) and upon reconsideration (Tr. 106-53), a hearing was held before an administrative law judge (ALJ) on January 24, 2019 (Tr. 37-73). On March 13, 2019, the ALJ issued a written decision concluding that Frankovis-Miesfeld was not disabled. (Tr. 10-30.) After the Appeals Council denied Frankovis-Miesfeld's request for review on November 23, 2019 (Tr. 1-3) she filed this action. All

parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 4, 6), and the matter is ready for resolution.

**2. ALJ's Decision**

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ found that "[t]he claimant has not engaged in substantial gainful activity since March 1, 2013, the amended alleged onset date." (Tr. 16.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). The ALJ concluded that Frankovis-Miesfeld has the following severe impairments: "cervical and lumbar degenerative disc disease (DDD); scoliosis; fibromyalgia; depressive disorder; anxiety disorder; attention deficit disorder (ADD)." (Tr. 16.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20

C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 16.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In making the RFC finding the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Frankovis-Miesfeld has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can never climb ladders, ropes or scaffolds. She can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl. The claimant must avoid concentrated exposure to wetness or humidity. The claimant must avoid concentrated exposure to excessive vibration. The claimant must avoid all use of moving machinery. She must

avoid all exposure to unprotected heights. She is limited to understanding, remembering, and carrying out no more than simple instructions, as well as simple routine tasks. The claimant is limited to employment in a low-stress job, defined as having only occasional decision-making required and only occasional changes in the work setting. The claimant is limited to employment in work where there is no fast-paced production requirements such as an assembly line. The claimant may have only incidental contact with the public. The claimant may have only occasional contact with co-workers and supervisors.

(Tr. 19.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560, 416.920(a)(4)(iv), 416.960. The ALJ concluded that "[t]he claimant is unable to perform any past relevant work." (Tr. 27.)

The last step of the sequential evaluation process requires that the ALJ determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). At this step, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 28.) Specifically, the ALJ concluded that she could work as a cleaner, DOT 323.687-014, office helper, DOT 239.567-010, or packager, DOT 753.687-038. (Tr. 28-29.)

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial

evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

**4. Analysis**

**4.1. Symptom Severity**

Central to the ALJ's conclusion that Frankovis-Miesfeld was not disabled was his finding that her impairments were not as severe as she alleged. (Tr. 20.)

> When evaluating a claimant's subjective symptoms, the ALJ follows a two-step process. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). First, the ALJ considers whether the claimant's impairments could reasonably be expected to produce the symptoms she alleges, such as pain. 20 C.F.R. §§ 404.1529(b), 416.929(b). Second, the ALJ considers whether the record supports the severity of the symptoms the claimant alleges, such as debilitating pain preventing work. 20 C.F.R. §§ 404.1529(c), 416.929(c). To do so, the ALJ will look to the claimant's reported activity levels and treatment received. This

court will "give the ALJ's credibility finding 'special deference' and will overturn it only if it is 'patently wrong.'" *Summers* [*v. Berryhill*], 864 F.3d [523,] 528 [(7th Cir. 2017)].

*Apke v. Saul*, 817 F. App'x 252, 257 (7th Cir. 2020).

The ALJ discussed the evidence in fair depth, and in summarizing his review he stated:

> The claimant has maintained significant mental and physical functional capacity through a conservative course of treatment consisting of prescribed medications, as well as some limited physical therapy and mental health counseling. Her treatments have controlled, reduced or eliminated her symptoms. Furthermore, as discussed above, the medical records show generally good objective findings during the claimant's medical examinations. In particular, apart from her back surgery in 2016, the record does not contain any evidence [of] significant mental health treatment requiring lengthy in-patient hospitalization, trips to the emergency room, or intensive outpatient therapy. Dr. Glass found that the claimant showed no clear evidence of significant limitation in sitting, standing, walking, lifting, carrying, handling, or grasping (Ex.12F/4). Furthermore, the claimant is sufficiently functional mentally and physically to cook simple meals, do simple cleaning, go shopping, drive a car, go camping and hiking, use her cell phone, go on the internet, and live with her husband and socialize with her daughter (Ex. 13E; Hearing Testimony).

(Tr. 24-25.)

Frankovis-Miesfeld's course of treatment cannot be described as "conservative." Notably absent from the ALJ's list of treatment are the two spinal fusion surgeries she underwent and the fact that additional surgery on her neck was recommended. (Tr. 21, 329, 393.)

Nor can it be fairly said that "[h]er treatments have controlled, reduced or eliminated her symptoms," at least not when viewed longitudinally, as "any treatment

and its success or failure" must be assessed when evaluating symptom severity. *See* SSR 16-3p, sec. 2. b. For example, about a month following her 2016 spinal surgery she reported no back pain and improved numbness and weakness but still complained of "intermittent horrible leg pain throughout the entire left leg." (Tr. 518.) A few weeks later she was again reporting back pain (Tr. 553) and was subsequently diagnosed with failed back syndrome (Tr. 1039; *see also* Tr. 21 (ALJ noting that in 2017, "The claimant subsequently reported a recurrence of her back and neck pain.")). Overall, the longitudinal record suggests progressive deterioration and treatment that, at best, brought short term relief.

The evidence that the ALJ relied on to assess Frankovis-Miesfeld's functioning is sometimes of suspect relevance, or at least not likely to be the most probative in revealing her condition. For example, the ALJ stated, "The 2018 medical notes reflect that during examination the claimant reported that she had no back pain, no joint pain, was feeling well, had a normal range of motion and gait, and appeared well-developed and well-nourished." (Tr. 22.) But Frankovis-Miesfeld's denial of back pain was in conjunction with a visit to a physician assistant regarding complaints of painful urination. Under the section of the record captioned "history of present illness" is written, "She reports lower abdominal pressure. No back pain. No fevers. No nausea or vomiting. She otherwise feels well." (Tr. 1026.) It would be a stretch to read this note as suggesting that Frankovis-Miesfeld no longer suffered her longstanding back pain. Rather, the more reasonable

reading of this record is that Frankovis-Miesfeld denied back pain that she associated with her complaint of dysuria.

Similarly, as part of this visit the physician assistant noted that Frankovis-Miesfeld had a normal range of motion in her neck. (Tr. 1028.) The physician assistant did not find, as the ALJ's recounting of the evidence might suggest, that Frankovis-Miesfeld had an overall normal range of her motion throughout her body; she commented only on Frankovis-Miesfeld's neck.

The observation that Frankovis-Miesfeld did not suffer from joint pain appears to be based on a note from a follow-up appointment regarding her complaint of dysuria. (Tr. 1033.) And the assessment of her gait did not come from any physical examination but is noted as part of mental status examination where Frankovis-Miesfeld sought to address problems with anxiety, depression, and sleep. (Tr. 1035.)

For a claimant suffering from degenerative disc disease, the best evidence of her physical functional capacity is unlikely to be found in medical records addressing urological or mental health complaints. This is not to say that, when such evidence is found, it is irrelevant. A claimant prone to exaggerating the severity of certain impairments might be most candid in other contexts. But an ALJ must not be too quick to assume that a medical assessment in one context translates to another; an evaluation of back pain in the context of a urology exam might be limited to assessing the probability of kidney inflammation and not necessarily reflect an absence of symptoms associated

with degenerative disc disease. Here, the ALJ's apparent failure to consider the context of specific medical evidence undermines his reliance on the evidence.

The ALJ also noted Frankovis-Miesfeld's activities of daily living. *See* SSR 16-3p sec. 2. d. 1. However, he did not explain how these activities were inconsistent with Frankovis-Miesfeld's reported limitations, and an inconsistency is not self-evident.

The ALJ stated that Frankovis-Miesfeld is able to "cook simple meals, do simple cleaning, go shopping, drive a car, go camping and hiking, use her cell phone, go on the internet, and live with her husband and socialize with her daughter." (Tr. 24-25.) Only cooking, cleaning, shopping, driving, camping, and hiking are potentially relevant to Frankovis-Miesfeld's physical condition. Scrutinizing the evidence that the ALJ cited in support of his statement reveals that Frankovis-Miesfeld is significantly limited in these activities (if she does them at all).

In a 2017 function report Frankovis-Miesfeld stated that during a day she will, after taking her medications and waiting for it to become effective, "do a chore and maybe run an errand but with rest in between. Up to 18 hrs in bed a day." (Tr. 397.) She will do "a chore 1-3 times a week" and may do "some cleaning depending on pain level." (Tr. 398.) She stated that she is able to prepare frozen dinners once or twice a week but added "my daughters do 90% of cooking." (Tr. 398.) When asked to describe things she was able to do before her illness that she is no longer able to do, she stated, in part, "daily cooking & chores." (Tr. 397.) She will go outside only a few times a week in a good week and will

shop once or twice a month, but only if one of her children is along to help. (Tr. 399.) She explained that she used to love camping and hiking but cannot do so anymore. (Tr. 400; *see also* Tr. 62 (hearing testimony that she has not hiked or camped in three years).) As the ALJ noted in another part of his decision, when Frankovis-Miesfeld attempted to go hiking, recovery took three days and pain medication. (Tr. 23; *see also* Tr. 1458; *cf.* 63 (hearing testimony that she does not remember this incident).) These activities are not inconsistent with Frankovis-Miesfeld's claimed limitations.

Taken together, the deficits in the ALJ's analysis of the severity of Frankovis-Miesfeld's symptoms require remand. The ALJ at times appeared to mischaracterize the record--for example, when he referred to Frankovis-Miesfeld's treatment as "conservative" or when he said "[h]er treatments have controlled, reduced or eliminated her symptoms." At other times he appeared to ignore that the context of certain medical records undermined their relevance as evidence of Frankovis-Miesfeld's physical impairments. Finally, Frankovis-Miesfeld's activities do not appear inconsistent with her claimed limitations and were significantly more limited than the ALJ's decision suggests.

### 4.2. Treating Source Opinions

Frankovis-Miesfeld argues that the ALJ improperly gave "little weight" to two of her medical providers, Mary Deli, a nurse practitioner, and John Carpenter, a physician.

### 4.2.1. Mary Deli

Deli completed a "Medical Assessment Form" where she opined that Frankovis-Miesfeld suffered severe and work-preclusive limitations, including that she would be off task more than 30 percent of a workday, could sit or stand for no more than 10 minutes at a time and for less than two hours in a workday, would need more than ten unscheduled breaks per day, and would miss more than four days of work per month. (Tr. 423-25.)

The ALJ gave this opinion "little weight," explaining that (1) Deli is not an acceptable medical source; (2) she did not sufficiently explain her opinion; (3) the opinion is inconsistent with Deli's treatment notes; and (4) the opinion is inconsistent with other treatment notes. (Tr. 26.) He explained that Deli's notes showed

> that the claimant had normal motor strength, as well as intact gait and balance, and that she could perform functional activities under her treatment plan (Ex.6F/31-34; Ex.14F/4, 7). Additionally, Ms. Deli's statements appear to [be] based on the claimant's subjective reports to Ms. Deli, and they do not state when the claimant's limitations began. Ms. Deli's opinions are also inconsistent with the claimant's own reports elsewhere, such as that the claimant has sufficient capacity to perform daily activities such as cooking simple meals, doing simple cleaning, and going shopping and driving, and other activities such as hiking and camping (Ex. 13E; Hearing Testimony). Furthermore, Dr. Glass found that the claimant showed no clear evidence of significant limitation in sitting, standing, walking, lifting, carrying, handling, or grasping (Ex.12F/4).

(Tr. 26.)

Frankovis-Miesfeld argues that "[n]one of these reasons are 'good reasons,' as they tend to misconstrue the Record." (ECF No. 12 at 11.) She then proceeds to outline thirteen

examples of medical evidence that she argues support Deli's opinion that the ALJ failed to discuss. (ECF No. 12 at 12-13.)

"[T]he ALJ was not required to mention every piece of evidence." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The fact that Frankovis-Miesfeld can point to evidence supporting Deli's opinion does not mean that there was not substantial evidence to support the ALJ's decision to discount Deli's opinion. Two contrary conclusions can both be supported by substantial evidence. *Wolvin v. Saul*, No. 18-CV-1285, 2019 U.S. Dist. LEXIS 171953, at *6 (E.D. Wis. Oct. 3, 2019). Evidence is rarely one-sided; the fact that the ALJ credited certain evidence over other evidence is not error but merely the nature of the ALJ's responsibilities. Frankovis-Miesfeld has not shown that the ALJ's conclusion was based on an impermissible "cherry picking" of the evidence whereby he ignored compelling evidence to the contrary. *See Pflughoeft v. Saul*, No. 19-CV-1548, 2020 U.S. Dist. LEXIS 211269, at *14 (E.D. Wis. Nov. 12, 2020) (citing *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (discussing impermissible cherry-picking)).

Frankovis-Miesfeld also notes that, although nurse practitioners are not "acceptable medical sources," an ALJ must still consider a nurse practitioner's opinion. (ECF No. 12 at 13 (citing 20 C.F.R. §§ 416.913, 404.1513.) She argues, "The fact that an opinion comes from a non-acceptable medical source does not give an ALJ reason to ignore it." (ECF No. 12 at 13.)

12
Case 2:19-cv-01842-WED   Filed 01/26/21   Page 12 of 19   Document 18

Frankovis-Miesfeld is correct that an ALJ cannot ignore a nurse practitioner's opinion merely because she is not an acceptable medical source. But the ALJ did not ignore Deli's opinion; he gave it "little weight." While an ALJ cannot give a nurse practitioner's opinion "little weight" solely because she is not an acceptable medical source, *see Mallett v. Saul*, No. 19-CV-512, 2020 U.S. Dist. LEXIS 48433, at *11 (E.D. Wis. Mar. 20, 2020) (citing *Gulley v. Berryhill*, No. 17-CV-1782, 2019 U.S. Dist. LEXIS 25986, at *5 (E.D. Wis. Feb. 19, 2019)), the fact that a nurse practitioner is not an acceptable medical source may appropriately factor into an ALJ's decision to discount her opinion insofar as it reflects a lack of relevant expertise or otherwise may be relevant to the factors under 20 C.F.R. §§ 404.1527(c) and 416.927(c). Frankovis-Miesfeld has not shown that the ALJ erred simply by noting, as one of the reasons for discounting her opinion, that Deli was not an acceptable medical source.

Frankovis-Miesfeld also alleges error in the ALJ's decision to discount Deli's opinion in part because it was based on Frankovis-Miesfeld's subjective reports. She argues that a patient's complaints are an "essential diagnostic tool." (ECF No. 12 at 13 (citing *Brown v. Barnhart*, 298 F.Supp. 2d 773, 792-93 (E.D. Wis. 2004) (quoting *Samuel v. Barnhart*, 295 F.Supp. 2d 926, 950 (E.D. Wis. 2003)).)

A patient's subjective reports are undoubtedly an "essential diagnostic tool." In fact, as to many impairments, particularly mental impairments, there may be no other means for diagnosing an impairment. However, when objective testing is available to

13
Case 2:19-cv-01842-WED   Filed 01/26/21   Page 13 of 19   Document 18

corroborate the claimant's subjective limitations, an ALJ may properly discount a medical opinion that relies unduly on the claimant's subjective reports rather than objective evidence. *See Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016) ("A treating doctor's opinion may be properly discounted, however, if it is based upon the claimant's subjective complaints rather than objective medical evidence."). Similarly, if a medical provider's opinion merely parrots the claimant's self-reported limitations and is not based on the medical provider's expert assessment, the ALJ may appropriately discount it. *See Jozefyk v. Saul*, No. 19-CV-1606, 2020 U.S. Dist. LEXIS 183703, at *15 (E.D. Wis. Oct. 2, 2020).

The court must reject Frankovis-Miesfeld's argument that the ALJ erred by discounting Deli's opinion in part because it was based on Frankovis-Miesfeld's subjective reports. Her argument is categorical—that it is never appropriate for an ALJ to discount a medical source's opinion because it relies on the patient's subjective reports. However, there is no categorical rule, and in many instances a medical source's reliance on the patient's subjective reports is an appropriate basis for discounting that opinion. *See Ghiselli*, 837 F.3d at 776.

The court also rejects Frankovis-Miesfeld's argument that the ALJ erred by discounting Deli's opinion because she did not specify when the impairments began. Without a timeframe the ALJ did not know whether Deli's opinion reflected Frankovis-

14
Case 2:19-cv-01842-WED   Filed 01/26/21   Page 14 of 19   Document 18

Miesfeld's condition throughout the relevant period, some portion of the relevant period, or even perhaps just on the day Deli completed the form.

However, significant in the ALJ's assessment of Deli's opinion was his conclusion that her "opinions are also inconsistent with the claimant's own reports elsewhere, such as that the claimant has sufficient capacity to perform daily activities such as cooking simple meals, doing simple cleaning, and going shopping and driving, and other activities such as hiking and camping." (Tr. 26.) As discussed above, the ALJ has failed to adequately explain how Frankovis-Miesfeld's reported activities of daily living were inconsistent with her alleged impairments. Therefore, it will be necessary for the ALJ to reassess Deli's opinion on remand.

### 4.2.2. Dr. Carpenter

Dr. Carpenter, who has been treating Frankovis-Miesfeld quarterly for more than five years, completed a Mental Impairment Medical Source Statement on March 26, 2018, wherein he opined that Frankovis-Miesfeld suffered various work preclusive symptoms, including likely being absent from work more than four days per month, requiring four to five extra unscheduled breaks per day, and being off task for about 20 percent of the day. (Tr. 418-22.) The ALJ gave Dr. Carpenter's opinion "little weight" because his opinions were not sufficiently explained, were inconsistent with Dr. Carpenter's treatment notes and those of other providers, and were inconsistent with Frankovis-Miesfeld's self-reports, including her reported activities of daily living. (Tr. 26.)

Frankovis-Miesfeld develops two arguments regarding the ALJ's treatment of Dr. Carpenter's opinion. First, she argues that the ALJ inappropriately relied on observations of her condition at medical appointments and equated that to her ability to engage in fulltime competitive work. (ECF No. 12 at 17.) Second, she argues that the ALJ inappropriately ignored the findings of a consultative examiner that tended to support Dr. Carpenter's opinion. (ECF No. 12 at 18.)

Frankovis-Miesfeld has not shown that the ALJ inappropriately conflated her functioning during medical appointments with her ability to work fulltime. Consistent with his obligation under 20 C.F.R. §§ 404.1527(c)(4) and 416.927(c)(4), the ALJ merely assessed whether Dr. Carpenter's opinion was consistent with the record as a whole.

However, with respect to the ALJ's obligation to assess whether Dr. Carpenter's opinion was consistent with other evidence, the ALJ erred in failing to specifically address the opinion of the consultative examiner. The consultative examiner found:

> It would appear there would be mild-to-moderate difficulties understanding, remembering, and certainly in carrying out simple instructions as noted throughout mental status questioning. There would be moderate limitation in responding appropriately to supervisors and coworkers as exemplified also by history. There would be moderate limitation with concentration, attention, and marked limitation with work pace with this determined by physical factors. There would be marked limitation withstanding stressors or adaptation to change.

(Tr. 701.)

The ALJ afforded the consultative examiner's opinion "partial weight," concluding that "the evidence of record does not provide a basis for the marked

limitations in any domain" because "the claimant has sufficient mental capacity to perform daily activities such as cooking simple meals, doing simple cleaning, and going shopping, as well as driving, and performing her financial tasks." (Tr. 24.) However, as discussed above, the ALJ overstated Frankovis-Miesfeld's daily activities.

The consultative examiner and Dr. Carpenter both opined that certain of Frankovis-Miesfeld's mental limitations were largely secondary to her pain, *e.g.*, her pain interfered with her concentration rather than any underlying mental impairment. And while the ALJ discounted each of these opinions, he did so without addressing how the opinions were consistent with each other. Therefore, remand is required. The consistency between two independent opinions may merit affording greater weight to both opinions.

**4.3. Residual Functional Capacity and Upper Extremity Limitations**

Frankovis-Miesfeld argues that the ALJ failed to include in the RFC finding limitations in her ability to use her arms, hands, or fingers. (ECF No. 12 at 25.) She then recounts medical evidence suggesting such limitations. (ECF No. 12 at 25-26.) The Commissioner notes in response that no medical source opined that Frankovis-Miesfeld would suffer any such limitations. (ECF No. 16 at 22.)

The court agrees with the Commissioner. Absent a medical opinion indicating that Frankovis-Miesfeld was limited in her use of her arms, fingers, or hands, the ALJ did not err. *See Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) ("When no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error."); *Best*

17
Case 2:19-cv-01842-WED   Filed 01/26/21   Page 17 of 19   Document 18

*v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) ("There is no error when there is 'no doctor's opinion contained in the record [that] indicated greater limitations than those found by the ALJ." (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004))).

## 5. Conclusion

The ALJ's assessment of the severity of Frankovis-Miesfeld's symptoms appears to have been based on an incomplete, if not incorrect, view of the medical evidence that, at times, considered evidence without due regard for the context in which certain statements were made. The ALJ also failed to adequately explain how Frankovis-Miesfeld's reported activities were inconsistent with her alleged limitations. Therefore, remand is required.

The ALJ on remand will also need to reassess Deli's opinion and reassess Dr. Carpenter's opinion in light of its apparent consistency with that of the consultative examiner.

A direct award of benefits, however, is inappropriate because not all factual issues have been resolved, *see Israel v. Colvin*, 840 F.3d 432, 441-42 (7th Cir. 2016), and the evidence is not such that it "can yield but one supportable conclusion." *Martin v. Saul*, 950 F.3d 369, 376 (7th Cir. 2020) (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)). All factual issues have not been resolved here. For example, Dr. Glass's opinion tends to suggest that Frankovis-Miesfeld's physical impairments are not as severe as she alleged.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **vacated**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further proceedings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 26th day of January, 2021.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge